# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

Aziz Mizraim Bey,

                    Plaintiff,

    -against-

RAS LaVrar, LLC, and
Cavalry SPV I, LLC/Cavalry Portfolio Services, LLC/
Cavalry Investments, LLC

                    Defendants.

-------------------------------------------------------------X

Docket No.: 18cv1897

**CLASS ACTION COMPLAINT**

Plaintiff AZIZ MIZRAIM BEY (hereafter, "Plaintiff"), a New York resident, brings this class action complaint by and through his attorney, The Tariq Law Firm P.L.L.C., against Defendants RAS LAVRAR, LLC and CAVALRY SPV I, LLC/CAVALRY PORTFOLIO SERVICES, LLC/ CAVALRY INVESTMENTS, LLC, (hereinafter "Defendants"), individually and on behalf of a class of all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure, based upon information and belief of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are based upon Plaintiff's own personal knowledge.

## INTRODUCTION/ PRELIMINARY STATEMENT

1.     Congress enacted the FDCPA in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). At that time, Congress was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to material instability, to the loss of jobs, and to invasions of individual privacy." *Id.* Congress concluded that "existing laws . . . [we]re inadequate to protect consumers," and that "the effective collection of debts" does not require "misrepresentation or other abusive debt collection practices." 15 U.S.C. §§ 1692(b) & (c).

1

2.      Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id.* § 1692(e). After determining that the existing consumer protection laws were inadequate, *id.* § 1692(b), Congress gave consumers a private cause of action against debt collectors who fail to comply with the Act. *Id.* § 1692k.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this class action under 28 U.S.C. § 1331, 15 U.S.C. § 1692 *et seq.* and 28 U.S.C. § 2201. If applicable, the Court also has pendent jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367(a).

4.       Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## NATURE OF THE ACTION

5.      Plaintiff brings this action on behalf of a class of New York consumers seeking redress for Defendants' actions of using unfair and unconscionable means to collect a debt.

6.      Defendants' actions violated § 1692 et seq. of Title 15 of the United States Code, commonly referred to as the Fair Debt Collections Practices Act ("FDCPA") which prohibits debt collectors from engaging in abusive, deceptive practices in the effort to collect on debt.

7.      Plaintiff is seeking damages, and declaratory and injunctive relief.

## PARTIES

8.      Plaintiff is a natural person and a resident of the State of New York, and is a "Consumer" as defined by 15 U.S.C. §1692 (a)(3).

9.      Defendants are Cavalry SPV I, LLC / Cavalry Portfolio Services, LLC / Cavalry Investments, LLC, a collection agency with a principal of business located in Valhalla, New

York that goes by at least these two names, and RAS Lavrar, LLC, a law firm with a principal of business located in Plantation, Florida.

10.    Upon information and belief, Defendants are companies that use the mail, telephone, and facsimile and regularly engage in business the principal purpose of which is to attempt to collect debts alleged to be due to another.

11.    Defendants are regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

12.    Defendants both fall under "debt collector" as defined under the FDCPA under 15 U.S.C. §1692a(6).

## CLASS ALLEGATIONS

13.    Plaintiff brings claim, pursuant to the Federal Rules of Civil Procedure (hereinafter "FRCP") Rule 23, individually and on behalf of the following consumer class (the "Class"):

All persons similarly situated in the State of New York from whom Defendant attempted to collect a consumer debt using the same unlawful form letter herein, from one year before the date of this Complaint to the present.

14.    The Class satisfies all the requirements of Rule 23 of the FRCP for maintaining a class action:

A. Upon information and belief, the Class is so numerous that joinder of all members is impracticable because there are hundreds and/or thousands of persons who have received debt collection letters and/or notices from Defendants that violate specific provisions of the FDCPA. Plaintiff is complaining of a standard form letter and/or notice that is sent to hundreds of persons (*See* **Exhibit A** except that the undersigned attorney has, in

accordance with Fed. R. Civ. P. 5.2, partially redacted the financial account numbers in an effort to protect Plaintiff's privacy);

B.  There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. These common questions of law and fact include, without limitation:

  i.  Whether Defendants violated various provisions of the FDCPA;

  ii.  Whether Plaintiff and the Class have been injured by Defendants' conduct;

  iii.  Whether Plaintiff and the Class have sustained damages and are entitled to restitution because of Defendants' wrongdoing and if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and

  iv.  Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief.

C.  Plaintiff's claims are typical of the Class, which all arise from the same operative facts and are based on the same legal theories.

D.  Plaintiff has no interest adverse or antagonistic to the interest of the other members of the Class.

E.  Plaintiff will fairly and adequately protect the interest of the Class and has retained experienced and competent attorneys to represent the Class.

F.  A Class Action is superior to other methods for the fair and efficient adjudication of the claims herein asserted. Plaintiff anticipates that no unusual difficulties are likely to be encountered in the management of this class action.

G.  A Class Action will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein. Absent a Class Action, class members will continue to suffer losses of statutory protected rights as well as monetary damages.

    i.  Two recent complaints against RAS LaVrar, attached hereto as **Exhibit B**, speak to pattern. Both exhibit Collection Letters with the exact same failures to meaningfully disclose attorney involvement (despite that these are signed by a specific attorney, the above-named Flynn Lavrar). *These failures were not even the FDCPA violations claimed in either suit*, which is indicative of the breadth of FDCPA violations contained in the form letter used by Defendants. The aforementioned Collection Letters are almost identical to each other and both are almost identical to the instant Plaintiff's Collection Letter, making it clear that Defendants use a form letter in most or all of their collection actions against consumers; as such, the collection letters the Defendants send thousands of consumers are in violation of FDCPA regulations and only a class action can give these consumers the opportunity to remedy same given the numerosity of those harmed.

ii.   Cavalry SPV I, LLC/Cavalry Portfolio Services, LLC/Cavalry Investments, LLC[1] are one of the largest debt purchasers in the country. "With over $7 billion of receivables, Cavalry Investments is one of the nation's largest acquirers of non-performing consumer loans. The firm ranks in the top ten of the country's largest debt buyers, according to Thompson Financial" (please see news article attached hereto as **Exhibit C**).

iii.   Cavalry has a long history of illegal and predatory behavior and, accordingly, has been sued three-hundred-thirty-one (331) times in the last three (3) years alone for FDCPA violations (please find attached hereto as **Exhibit D** two spreadsheets listing suits against, respectively, Cavalry SPV I, LLC, Cavalry Portfolio Services, LLC, and Cavalry Investments, LLC). In 2015, Arizona's Department of Financial Institutions fined Cavalry $175,000.00 for various violations, including refusing to supply consumers with evidence of their debt (please see Consent Order attached hereto as **Exhibit E**). In 2016, the West Virginia Attorney General's sued Defendant for unlicensed debt collection and abusive and harassing practices against consumers, as a result of which they were ordered to cancel almost $20 million of consumer debt and pay damages to the state (please see article attached hereto as **Exhibit F**). In the last three years, three-hundred-and-thirty-nine (339) complaints regarding Cavalry

---

[1] Cavalry SPV I, LLC is simply an affiliate of debt collection company Cavalry Portfolio Services, LLC / Cavalry Investments, LLC, one of the largest debt buyers in the United States. In the instant action, Cavalry SPV I, LLC is listed on the Collection Letter while Cavalry Portfolio Services, LLC is listed on the Plaintiff's credit report; as such, and given that one is an affiliate of the other, the two companies can essentially be treated as interchangeable for the purposes of this Complaint.

6

Portfolio Services, LLC/Cavalry SPV I LLC were filed with the Better Business Bureau (please see attached hereto as **Exhibit G** screenshots from the Better Business Bureau website and please note that they list Cavalry SPV I, LLC as an "Alternative Business Name" of Cavalry Portfolio Services, LLC).

    iv.   If Defendants' conduct is allowed to proceed without remedy, they will continue to reap and retain the proceeds of their ill-gotten gains.

H. Defendants have acted on grounds generally applicable to the entire Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## ALLEGATIONS OF FACT PARTICULAR TO AZIZ MIZRAIM BEY

15. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "14" herein with the same force and effect as if the same were set forth at length herein.

16. Defendants collect and attempt to collect debts incurred or alleged to have been incurred for personal, family or household purposes on behalf of creditors using the United States Postal Services, telephone and Internet.

17. Upon information and belief, within the last year Defendants commenced efforts to collect an alleged consumer "debt" as defined by 15 U.S.C. 1692a(5), when it mailed a Collection Letter to Plaintiff seeking to collect an unpaid balance allegedly owing to Cavalry SPV I, LLC, assignee of Citibank, N.A., the original debtor.

18. On or around January 30, 2018, Defendants sent Plaintiff a collection letter (hereinafter, the "Letter"). *See* **Exhibit A**.

19.    The Letter was sent or caused to be sent by persons employed by Defendants as a "debt collector" as defined by 15 U.S.C. §1692a(6).

20.    The Letter is a "communication" as defined by 15 U.S.C. §1692a(2).

21.    The Letter states in pertinent part, and in bold lettering:

"**1.    The amount of debt: $8622.59 as of the date of this letter.**"

22.    The Letter identified itself specifically as a communication from a debt collector: "This communication is from a debt collector."

23.    However, the Letter states in pertinent part: "Our law firm is attempting to collect a debt that is owed to Cavalry SPV I, LLC, as assignee of Citibank, N.A."

24.    Cavalry SPV I, LLC is reporting on his credit report. *See relevant portion of his report attached hereto as* **Exhibit H**.

25.    The Letter states in pertinent part: "Should you desire to speak to someone to discuss the possibility of entering into a payment arrangement contact us at 844-500-2844."

26.    The Letter states in pertinent part: "Unless you dispute the validity of the debt or any portion thereof within thirty (30) days after receipt of this Notice, we will assume that the debt is valid."

27.    The Letter states in pertinent part: "If you notify us in writing within thirty (30) days after receipt of this Notice that the debt or any portion thereof is disputed, we will obtain verification of the debt or a copy of any judgment against you and it will be mailed to you."

28.    As set forth in the following Counts, Defendants violated the FDCPA.

29.    The letter failed to adequately and honestly convey the amount of debt.

30.    The letter failed to disclose whether an attorney had reviewed the letter.

31.    The letter suggested a dispute must be made in writing.

**First Count**

**15 U.S.C. §1692g**

**Failure to Adequately and Honestly Convey the Amount of the Debt**

32.    Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "31" herein with the same force and effect as if the same were set forth at length herein.

33.    15 U.S.C. § 1692g provides that within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing certain enumerated information.

34.    15 U.S.C. § 1692g(a)(1) requires the written notice provide "the amount of the debt."

35.    The written notice, to comply with 15 U.S.C. § 1692g(a)(1), must convey the amount of the debt clearly and accurately from the perspective of the least sophisticated consumer.

36.    The written notice, to comply with 15 U.S.C. § 1692g(a)(1), must state whether interest, late fees and/or other fees are accruing.

37.    The written notice, to comply with 15 U.S.C. § 1692g(a)(1), must allow the least sophisticated consumer to determine the minimum amount he or she owes at the time of the notice.

38.    The written notice, to comply with 15 U.S.C. § 1692g(a)(1), must allow the least sophisticated consumer to determine what he or she will need to pay to resolve the debt at any given moment in the future.

39.     The written notice, to comply with 15 U.S.C. § 1692g(a)(1), must contain an explanation, understandable by the least sophisticated consumer, of any fees or interest that may cause the balance to increase at any time in the future.

40.     The failure to include the foregoing information renders an otherwise accurate statement of the "amount of the debt" violative of 15 U.S.C. § 1692g(a)(1).

41.     The Letter failed to inform Plaintiff whether interest is being charged on the debt amount.

42.     The Letter failed to inform Plaintiff whether interest is still accruing on the debt amount.

43.     The Letter clearly violated 15 U.S.C. § 1692g(a)(1). Faced with a similarly vague and insufficient Collection Letter in *Jones v. Midland Funding, LLC, 755 F. Supp. 2d 393*, the Court noted that "[n]o itemization was provided and there was no mention of interest or other charges" and decided in favor of Plaintiff: "I agree with the <u>Miller</u> line of cases that when a debt is accruing interest, a validation notice fails to correctly state the amount of the debt as required by § 1692g unless it discloses the fact that interest is accruing and informs the consumer of the applicable interest rate. If a validation notice lacks this information, the least sophisticated consumer, although aware that debt typically accrues interest, may be left uncertain as to the amount of the debt." *Id*.

44.     The Letter failed to advise Plaintiff what portion of the amount listed is principal. See *Michalek v. ARS Nat'l Sys., 2011 U.S. Dist. LEXIS 142976*, *15: "Specifically, the issue was that the 'letter failed to indicate the date as of which the stated interest had been calculated, and also failed to disclose that interest would continue to accrue on unpaid principal.'" In the instant case, the Letter failed to even provide a breakdown of the alleged debt or provide any illumination as to principal and interest to any extent.

45.     The Letter failed to inform Plaintiff whether the amount listed will increase.

46.    The Letter failed to inform Plaintiff if the amount does increase, on what date it will increase, yet it used the phrases "current balance" and "as of the date of this letter." The Letter was confusing to the Plaintiff and is likely to be misconstrued by the "least sophisticated consumer" since it is open to more than one reasonable interpretation, at least one of which is inaccurate.

47.    In *Avila v. Riexinger & Assocs., LLC, 817 F.3d 72*, the Court ruled in favor of the Plaintiff due to the following conclusion: "The question presented is whether a collection notice that states a consumer's 'current balance,' but does not disclose that the balance may increase due to interest and fees, complies with this provision. We hold that Section 1692e requires debt collectors, when they notify consumers of their account balance, to disclose that the balance may increase due to interest and fees."

48.    The Letter the Plaintiff received stated his alleged "current balance," as in *Avila v. Riexinger & Assocs.*, *supra*, yet the Defendants did not disclose that the balance may increase due to interests and fees.

49.    The Letter failed to inform Plaintiff if there is interest, what the amount of the accrued interest will be.

50.    The Letter failed to inform Plaintiff if there is interest, what the interest rate is. In the comparable *Stonecypher v. Finkelstein Kern Steinberg & Cunningham, 2011 U.S. Dist. LEXIS 88319*, "the court [found] that Plaintiff has successfully asserted facts to support the allegation that Defendant violated 15 U.S.C. § 1692g(a)(1). As evidenced by later communications from Defendant, [the Collection Letter] did not correctly state the amount of the debt because it failed to indicate that interest was accruing and the applicable interest rate."

51.     The Letter failed to inform Plaintiff if there is interest, the amount of money the amount listed will increase per day.

52.     The Letter failed to inform Plaintiff if there is interest, the amount of money the amount listed will increase per week.

53.     The Letter failed to inform Plaintiff if there is interest, the amount of money the amount listed will increase per month.

54.     The Letter failed to inform Plaintiff if there is interest, the amount of money the amount listed will increase per any measurable period.

55.     The Letter, because of the aforementioned failures, would render the least sophisticated consumer unable to determine the amount of his or her debt.

56.     The least sophisticated consumer could reasonably believe that the debt could be satisfied by remitting the listed amount as of the date of the letter, at any time after receipt of the letter. "Because the statement of an amount due, without notice that the amount is already increasing due to accruing interest or other charges, can mislead the least sophisticated consumer into believing that payment of the amount stated will clear her account, we hold that the FDCPA requires debt collectors, when they notify consumers of their account balance, to disclose that the balance may increase due to interest and fees. We think that requiring such disclosure best achieves the Congressional purpose of full and fair disclosure to consumers that is embodied in Section 1692e. It also protects consumers such as plaintiffs who may hold the reasonable but mistaken belief that timely payment will satisfy their debts." *Avila v. Riexinger & Assocs., LLC, 817 F.3d 72*.

57.     The least sophisticated consumer could reasonably believe that the amount listed was accurate only on the date of the Letter.

58.     If interest is continuing to accrue, the least sophisticated consumer would not know the amount of the debt because the letter fails to indicate the applicable interest rate.

59.     If interest is continuing to accrue, the least sophisticated consumer would not know the amount of the debt because the letter fails to indicate what the amount of the accrued interest will be.

60.     If interest is continuing to accrue, the least sophisticated consumer would not know the amount of the debt because the letter fails to indicate when such interest will be applied.

61.     If interest is continuing to accrue, the least sophisticated consumer would not know the amount of the debt because the letter fails to indicate the amount of money the amount listed will increase by at any measurable period.

62.     "None of the letters provided further detail regarding when or how the balance had been calculated, whether it included interest or whether interest continued to accrue. The court finds that the "least sophisticated consumer" could have read these letters in at least two different ways. *On one hand*, an unsophisticated consumer could reasonably conclude that the balance was a fixed amount that would not be subject to further interest, late fees, or other charges. *On the other*, an unsophisticated consumer could just as reasonably determine that the balance would continue to grow over time as interest accrued. *One of those meanings would necessarily be inaccurate*. Therefore, the court finds that Defendants' letters were deceptive as a matter of law. Courts in other districts have reached the same conclusion on similar facts. The court grants Ms. Snyder's motion for summary judgment on this issue." *Snyder v. Gordon*, No. C11-1379 RAJ, 2012 U.S. Dist. LEXIS 120659, at *8-9 (W.D. Wash. Aug, 2012), *Avila v. Riexinger & Assocs., LLC,* 817 F.3d 72, 75 (2d Cir. 2016).

63.     Pursuant to New York State law, interest accrues on the judgment amount from the date of the judgment at the rate of 9% per annum.

64.     The amount of the judgment automatically increases each day that the judgment amount remains unpaid due to the automatically accrued statutory interest.

65.     In this case, the "Total Due" was likely increasing due to interest, as per New York statute. Nevertheless, the collection notice did not disclose that the amount of the debt stated in the Letter "could", "may", or "will" increase over time.

66.     To the extent that the Creditor, or the Defendants, intended to waive the automatically accrued and accruing interest, it was required to disclose that in the most conspicuous of terms.

67.     If the "Current Balance" would never increase and the debt collector is always willing to accept this "specified amount" in "full satisfaction" of the debt, then the debt collector must clearly state that the holder of the debt will always accept payment of the amount set forth in "full satisfaction" of the debt.

68.     The Plaintiff, as well as the "least sophisticated consumer" was unsure as to whether or not the said account was accruing interest.

69.     The 8th Circuit in *Haney v. Portfolio Recovery Assocs., No. 15-1932, 2016 U.S. App LEXIS 17287 (8th Cir. Sep 21, 2016)*, clearly explains that merely not including interest in post charge off statements is not express waiver of interest, and the debt collector or creditor can seek the interest in the future.

70.     In fact, in this case the Plaintiff is still not sure whether there was any intent to waive the interest. There was definitely no express waiver and disclosure of waiver is mandatory if interest was originally accruing per the statute. The consumers could not know what the real balance is.

71.     The intent to waive a statutory right must be unmistakably and may not be inferred from doubtful or equivocal acts. *Navillus Tile, Inc. v. Turner Const. Co., 2 A.D. 3d 209, 770 N.Y.S.2d 3 (1st Dep't 2003)*. A waiver of a contract right does not occur by negligence, oversight or thoughtlessness and cannot be inferred from mere silence. *Acumen Re Management Corp. v. General Sec. Nat. Ins. Co., 2012 WL 3890128, at *6 (S.D. N.Y. 2012)*, reconsideration denied, motion to certify appeal granted, 2012 WL 6053936 (N.Y. 2012). If interest was waived or stopped accruing the collection notice must disclose that the debt is "static" and that the holder of the debt would accept payment of the amount set forth in full satisfaction of the debt. *McNamee v. Debski & Assocs., P.A., No. 8:16-cv-2272-T-33TBM, 2016 U.S. Dist. LEXIS 131912*, at *8-9 (M.D. Fla. Sep. 27, 2016). ("The letters did not inform [the debtor] that *Capitol One* had instructed [the debt collector] to cease collecting [] interest… i.e., that *Capitol One* was willing to accept $3, 129.05 in full satisfaction of the debt. Because the letters did not "clearly state [] that the holder of the debt [would] accept payment of the amount set forth in full satisfaction of the debt…," *Avila*, 817 F.3d at 77, [the debtors] Complaint plausibly states a claim to relief under FDCPA.") (citations omitted)

72.     The 8th Circuit Court of Appeals found that the fact that the debt was charged off and that the creditor or debt buyer did not charge statutory or prejudgment interest in its statements post charge off does not constitute an express waiver and statutory or prejudgment interest is still continuing to accrue and may be charged at a future time.

73.     The Second Circuit adopted a safe harbor disclaimer stating "that requiring such disclosure best achieves Congressional purpose of full and fair disclosure to consumers that is embodied in Section 1692e. It also protects consumers such as the Plaintiff, who may hold the

reasonable but mistaken belief that timely payment will satisfy their debts." *Avila v. Riexinger Assocs., LLC, 817 F. 3d 72, 76 (2d Cir. 2016).*

74.    The said letter fails to include the safe harbor language set out by the Second Circuit.

75.    The "Current Balance" in this case was for an amount that included original principal, fees, and statutory interest.

76.    The Plaintiff was left uncertain as to whether the "Current Balance" was accruing interest, as there was no disclosure that indicated otherwise.

77.    The Plaintiff was left unsure whether the "Current Balance" would accrue any type of fees, costs and/or disbursements, as there was no disclosure that indicated otherwise.

78.    A reasonable consumer could read the notices and be misled into believing that he or she could pay the debt in full by paying the amount listed on the notice.

79.    In fact, however, since statutory interest is automatically accruing daily, and since there are undisclosed legal fees that will accrue, a consumer who pays the "Current Balance" stated on the notices will be unaware as to whether or not the debt has been paid in full.

80.    The letter failed to advise Plaintiff that if Plaintiff pays the amount listed, an adjustment may be necessary after Defendants receive payment.

81.    The letter failed to advise Plaintiff that if Plaintiff pays the amount listed, Defendants will inform Plaintiff of the balance difference before depositing payment.

82.    The Defendants' failures are purposeful.

83.    In order to induce payments from consumers that would not otherwise be made if the consumer knew the true amount due, Defendants do not inform the consumer whether interest is applied.

84.     In order to induce payments from consumers that would not otherwise be made if the consumer knew the true amount due, Defendants do not inform the consumer when interest might be applied.

85.     Defendants failed to clearly and unambiguously state the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1).  A collection letter "is incomplete where . . . it omits information allowing the least sophisticated consumer to determine the minimum amount she owes at the time of the notice, what she will need to pay to resolve the debt at any given moment in the future, and an explanation of any fees and interest that will cause the balance to increase." *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 216 (2d Cir. 2017).

86.     The FDCPA requires debt collectors, when notifying consumers of their account balance, to disclose that the balance <u>may</u> increase due to interest and fees; failure to include such disclosures would harm consumers such as the Plaintiff who may hold the reasonable but mistaken belief that timely payment will satisfy their debts. This failure would abrogate the Congressional purpose of full and fair disclosure to consumers that is embodied in Section 1692e.

87.     The Letter would likely make the least sophisticated consumer uncertain as to the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1).

88.     The Letter would likely make the least sophisticated consumer confused as to the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1).

89.     Defendants' conduct violated 15 U.S.C. §§ 1692g(a)(1) and 1692e.

90.     Plaintiff suffered injury in fact by being subjected to unfair and abusive practices of the Defendant.

91.    Plaintiff suffered actual harm by being the target of the Defendants' misleading debt collection communications.

92.    Defendants violated the Plaintiff's right not to be the target of misleading debt collection communications.

93.    Defendants violated the Plaintiff's right to a truthful and fair debt collection process.

94.    Defendants used materially false, deceptive, misleading representations and means in its attempted collection of Plaintiff's alleged debt.

95.    Defendants' communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to Defendants' collection efforts.

96.    The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights; the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. The Defendants' false representations misled the Plaintiff in a manner that deprived him of his right to enjoy these benefits, and therefore these materially misleading statements trigger liability under section 1692e of the Act.

97.    These deceptive communications additionally violated the FDCPA since they frustrate the consumer's ability to intelligently choose his or her response.

98.    Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered damages including but not limited to fear, stress, mental anguish, emotional stress, and acute embarrassment. Plaintiff and putative class members are entitled to preliminary and permanent injunctive relief, including declaratory relief, and damages.

**Second Count**
**15 U.S.C. §1692e**
**False and Deceptive Representation of Attorney Involvement**

99.     Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "98" herein with the same force and effect as if the same were set forth at length herein.

100.    15 U.S.C. § 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" including 15 U.S.C. § 1692e(3) "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney" and U.S.C. § 1692e(10)  "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

101.    It is a violation of FDCPA for the Defendants to have included the "RAS LAVRAR LAW OFFICES" logo at the top left corner of the Letter.

102.    It is a violation of FDCPA for the Defendants to have included the name and contact information of the RAS LaVrar, LLC firm beside the logo.

103.    It is a violation of FDCPA for the Defendants to have begun the letter with the phrase "Our law firm".

104.    It is a violation of FDCPA for the Defendants to have signed the letter with "RAS LaVrar, LLC".

105.    It is a violation of FDCPA for the Defendants to have included a "New York City License" number at the top right corner of the Letter.

106.    In *Clomon v. Jackson*, "the Second Circuit held that a mass-produced letter containing a collection agency's part-time, general counsel's name in the letterhead and a facsimile of his

signature at its conclusion, where the attorney reviewed neither the debtor's file nor any particular dunning letter (other than the form) before mailing, constituted a false and misleading communication in violation of 15 U.S.C. §§ 1692e and 1692e(3) and (10)." *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

107.    "The Sixth Circuit more recently decided that a collection letter on lawyer letterhead, where the lawyer was not acting as a lawyer, may be deceptive" *Kistner v. Law Offices of Michael P. Margelefsky, L.L.C.,* 518 F.3d 433 (6th Cir. 2008). See 15 U.S.C. § 1692e(3); § 5.5.6, infra.

108.    In the instant case, the Defendants include general counsel's name in the letterhead and sign the letter as the entire law firm, thereby falsely and misleadingly communicating that an attorney reviewed the Plaintiff's file.

109.    In *Lesher v. Law Offices of Mitchell N. Kay, P.C.*, 650 F.3d 993 (3d Cir. 2011), "the court affirmed the lower court's finding that collection letters presented on a law firm's letterhead violated the FDCPA's general prohibition against 'false, deceptive, or misleading' communications because they falsely implied that an attorney, acting as an attorney, was involved in collecting the debt. In our view, the least sophisticated debtor, upon receiving these letters, may reasonably believe that an attorney has reviewed his file and has determined that he is a candidate for legal action."

110.    Here too, the least sophisticated debtor may reasonably believe that an attorney has reviewed his file and has determined that he is a candidate for legal action due to, inter alia, the law firm's logo on the Letter.

111.    Furthermore, the Letter fails to clearly, prominently, or conspicuously that although the letter is from a lawyer, the lawyer is acting solely as a debt collector.

112.    Upon information and belief, Defendants' letter is one of many form letters, sent to multiple recipients with pertinent information inserted, in which no individual attorney review had taken place. Nevertheless, Defendants omit the required clear, prominent, and conspicuous disclaimer under the 2nd Circuit case law that no attorney with Defendant/s' firm has personally reviewed the referenced account. *Gonzalez v. Kay*, 577 F.3d 600 (5th Cir. 2009).

113.    "We caution lawyers who send debt collection letters to state clearly, prominently, and conspicuously that although the letter is from a lawyer, the lawyer is acting solely as a debt collector and not in any legal capacity when sending the letter. The disclaimer must explain to even the least sophisticated consumer that lawyers may also be debt collectors and that the lawyer is operating only as a debt collector at that time. Debt collectors acting solely as debt collectors must not send the message that a lawyer is involved, because this deceptively sends the message that the 'price of poker has gone up.'" *See Id*.

114.    The Letter is in clear violation here; the aspects of the Letter referred to in paragraphs "101" through "105" – particularly the phrase "Our law firm" – all send the message in no uncertain terms that a lawyer is involved.

115.    Defendants' failure to state that no attorney review has occurred is deceptive pursuant to *Daniel S. Bock, Jr. vs. Pressler & Pressler*, Civ. No. 1 1-7593 (KMXMCA) (opinion of the Hon. Kevin McNulty, dated June 30, 2014), in which a debtor sued defendant attorneys alleging that they do not thoroughly review the Complaints filed against debtors before they file same with the Court. The Court ruled that *Pressler* did violate the FDCPA, and that *Pressler* was liable for damages to the defendant, finding that the defendant's attorney handling collection complaints filed in New Jersey courts, "...signed the complaint against Bock. He did not draft the complaint, and he did not carefully read and review it in any meaningful sense. He did not conduct any

inquiry concerning Midland's claim against Bock, let alone one which could have permitted him to form a good faith belief that the allegations against Bock had evidentiary support and were actionable under applicable law..., no person or computer at *Pressler* ever checked the cardholder agreement or the chain of assignment. In sum, the evidence shows that ...There was no reasonable inquiry or exercise of professional judgment.

116.    This would not meet the *Lesher/Nielson* standards for meaningful attorney involvement when sending collection letters, and it does not meet the standards for filing a complaint."

117.    Defendants' letters too are intended to convey the impression that Plaintiff and other consumers are receiving correspondence from lawyers retained by a creditor to communicate in a legal capacity, when in fact, Defendant is functioning strictly and solely as a debt collector. While Defendants state "This communication is from a debt collector," they purposely and misleadingly omit a word such as "strictly," "solely" "only" or "exclusively," which would eliminate any possibility that they were writing as lawyers.

118.    There was arguably no meaningful attorney involvement. In *Martsolf v. JBC Legal Group*, P.C., 2008 WL 275719 (M.D. Pa. Jan. 30, 2008), the court held "that these rapid, technologically aided review processes did not demonstrate the sort of independent analysis and professional opinion that must occur when a debt collector represents that an attorney has reviewed a debt. An attorney using these processes becomes little more than a computer operator unengaged in a considered legal analysis of the debtor's account." RAS LaVrar, LLC's website boasts of exactly this process: "Recreating the legal collections landscape through technology, innovation, and customer service."

119.    As in *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002), the attorney Defendants did not make a "considered, professional judgment" that the individual consumer Plaintiff was

delinquent and was a candidate for legal action or that the dunning letter should be sent to them. In *Shula v. Lawent*, 359 F.3d 489 (7th Cir. 2004), allegations that communication was from an attorney who had not reviewed the file raised issues of material fact which could not be resolved on summary judgment. *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003): The Court argued that merely being told by a client that a debt was overdue was insufficient to meet the FDCPA standard of meaningful attorney involvement, and that therefore summary judgment should not be granted to an attorney collector based on conclusory affidavits in a case involving a claim that the attorney sent collection letters without conducting a meaningful review of the circumstances surrounding each alleged debt, without the consumer having the opportunity to investigate specific facts surrounding the attorney's review.

120.    In *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996), the Court found that by signing dunning letters, an attorney violated the FDCPA by having insufficient involvement because he did not review debtor files, did not decide which letters to send, and did not see particular letters before they were sent. The Court decided similarly in *Schreiber v. Sokoloff*, 2014 WL 2716783 (E.D.N.Y. June 10, 2014): "A genuine dispute of material fact exists as to whether the defendant attorney engaged in a meaningful review of plaintiff's account, as required by the FDCPA prior to sending the collection letter."

121.    The Court came to the same conclusion in *Suquilanda v. Cohen & Slamowitz, L.L.P.*, 2011 WL 4344044 (S.D.N.Y. Sept. 8, 2011): Allegations that defendants used law firm letterhead to send a debt collection notice without an attorney conducting any meaningful review plausibly constituted a § 1692e(3) violation.

122.     In yet another relevant case, *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C*., 369 F. Supp. 2d 353 (E.D.N.Y. 2005), the collector's motion to dismiss was denied as to claims of lack of meaningful attorney review where the letters were computer-generated.

123.     The Letter is in violation of 15 U.S.C. § 1692e regardless of its statement that it is from a debt collector. Though the Letter includes the sentence "This communication is from a debt collector", "the statement that the letters were 'from a debt collector' is a statutorily required notification that 'should not be viewed as nullifying any implication that the letter is from an attorney.'" *See*, *supra*, *Lesher v. Law Offices Of Mitchell N. Kay*, P.C., 650 F.3d 993 (3d Cir. 2011).

124.     The language in the Letter concerning a "law firm," when examined from the perspective of the least sophisticated consumer, leads the least sophisticated consumer to believe that the Defendants were acting in a legal capacity, in violation of 15 U.S.C. § 1692e.

125.     15 USC §1692 e (3) - preface prohibits the false representation or implication that any individual is an attorney or that any communication is from an attorney. Defendants violated 15 USC §1692 e (3) - preface when they sent out the letter to the Plaintiff falsely implying that the letter is from an attorney yet did not have a specific attorney contact name or signature to state otherwise.

126.     Pursuant to the terms of 15 USC §1692 f - preface, a debt collector is prohibited from using any unfair or unconscionable means to collect a debt.

127.     The Defendants violated 15 USC §1692 f - preface by unfairly and unconscionably sending initial contact letters, which are unfairly designed to convince consumer recipients that they are being contacted regarding a debt with all the implications associated with a pending legal procedure and associated dire consequences. Defendants' letters intend to unfairly and

unconscionably intimidate and unsettle consumers and convince them that legal action against them may be imminent, thereby provoking the consumer into contacting Defendants in furtherance of Defendants' debt collection objectives.

128.    Defendants have violated § 1692e in that multiple aforementioned elements of the Letter falsely and misleadingly communicate that an attorney meaningfully reviewed the Plaintiff's case and that the Defendants were acting in a legal capacity.

129.    Plaintiff suffered injury in fact by being subjected to unfair and abusive practices of the Defendant.

130.    Plaintiff suffered actual harm by being the target of the Defendants' misleading debt collection communications.

131.    Defendants violated the Plaintiff's right not to be the target of misleading debt collection communications.

132.    Defendants violated the Plaintiff's right to a truthful and fair debt collection process.

133.    Defendants used materially false, deceptive, misleading representations and means in its attempted collection of Plaintiff's alleged debt.

134.    Defendants' communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to Defendants' collection efforts.

135.    The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights; the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. The Defendants' false representations misled the Plaintiff in a manner that deprived him of his right to enjoy these benefits, and therefore these materially misleading statements trigger liability under section 1692e of the Act.

136.    These deceptive communications additionally violated the FDCPA since they frustrate the consumer's ability to intelligently choose his or her response.

137.    Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered damages including but not limited to fear, stress, mental anguish, emotional stress, and acute embarrassment. Plaintiff and putative class members are entitled to preliminary and permanent injunctive relief, including declaratory relief, and damages.

**Third Count**
**15 U.S.C. §1692g(a)(3)**
**Suggesting a Dispute Must be Made in Writing**

138.    Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "137" herein with the same force and effect as if the same were set forth at length herein.

139.    15 U.S.C. § 1692g(a)(3) requires the notice to include a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

140.    There is no requirement that the consumer dispute the debt in writing.

141.    It is a violation of FDCPA to require disputes be made in writing.

142.    It is a violation of the FDCPA to include language in the Letter that overshadows the required 15 U.S.C. § 1692g(a)(3) statement.

143.    It is a violation of the FDCPA to include language in the Letter that contradicts the required 15 U.S.C. § 1692g(a)(3) statement.

144.    It is a violation of the FDCPA to include language in the Letter that, when examined from the perspective of the least sophisticated consumer, overshadows the required § 1692g(a)(3) statement.

145.    It is a violation of the FDCPA to include language in the Letter that, when examined from the  perspective of the least sophisticated consumer, contradicts the required § 1692g(a)(3) statement.

146.    It is a violation of the FDCPA to include language in the Letter that, when examined from the perspective of the least sophisticated consumer, leads the least sophisticated consumer to believe that his or her dispute must be in writing.

147.    Defendants' Letter states "Unless you dispute the validity of the debt or any portion thereof within thirty (30) days after receipt of this Notice, we will assume that the debt is valid" and then immediately thereafter states, "If you notify us in writing within thirty (30) days after receipt of this Notice that the debt or any portion thereof is disputed, we will obtain verification of the debt or a copy of any judgment against you and it will be mailed to you."

148.    The language in the aforementioned second statement overshadows the required first statement by including the phrase "*in writing*" (emphasis added).

149.    "It is undisputed that the Second Circuit has prohibited debt collectors from stating, directly or indirectly, that consumers may only enforce their right to dispute an alleged debt in writing." *Balke v. Alliance One Receivables Mgmt., 2017 U.S. Dist. LEXIS 94021* citing *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013).

150.    Even though the aforementioned first statement does not include the phrase "in writing", the second statement could reasonably be interpreted by the least sophisticated consumer to mean that disputes must be in writing in order to trigger any protections, not just to trigger the actions stated in the second statement. In *Lotito v. Recovery Assocs. Inc*., 2014 WL 4659464 (E.D.N.Y. Sept. 17, 2014), the Court denied the collection agency's motion to dismiss the § 1692e claim and granted sua sponte judgment to the consumer on the § 1692e claim where the

agency sent a second dun during the verification period stating that "should you not dispute this matter in writing within 30 days of our first communication to you, we will assume that our information is correct and proceed accordingly." The court reasoned that the second letter could reasonably be interpreted by the least sophisticated consumer as representing, incorrectly, that a debt dispute must be made in writing contrary to the holding that § 1692g(a)(3) "does not impose a writing requirement" as articulated in Hooks v. Forman, Holt, Eliades & Ravin, L.L.C, 717 F.3d 282, 286 (2d Cir. 2013).

151.    The least sophisticated consumer, reading the Letter as a whole, would be likely to understand that they may only dispute the validity of the debt in writing.

152.    Disputes need not be in writing. *Avila v. Riexinger & Assocs., LLC, 817 F.3d 72. Camacho v. Bridgeport Financial, Inc., 430 F.3d 1078 (9th Cir. 2005). Register v. Reiner, Reiner & Bendett, PC, 488 F. Supp. 2d 143, 147 (D. Conn. 2007). Vega v. Credit Bureau Enters., No. 02-CIV-1550, 2005 U.S. Dist. LEXIS 4927, 2005 WL 711657, at *8 (E.D.N.Y. Mar. 29, 2005).*

153.    The language concerning written disputes, when examined from the perspective of the least sophisticated consumer, overshadows the required § 1692g(a)(3) statement.

154.    The language concerning written disputes, when examined from the perspective of the least sophisticated consumer, leads the least sophisticated consumer to believe that his or her dispute must be in writing.

155.    Defendants have violated § 1692g in that the above-referenced language overshadows the information required to be provided by that Section. See *Balke v. Alliance One Receivables Mgmt., 2017 U.S. Dist. LEXIS 94021*.

156.    Plaintiff suffered injury in fact by being subjected to unfair and abusive practices of the Defendant.

157.    Plaintiff suffered actual harm by being the target of the Defendants' misleading debt collection communications.

158.    Defendants violated the Plaintiff's right not to be the target of misleading debt collection communications.

159.    Defendants violated the Plaintiff's right to a truthful and fair debt collection process.

160.    Defendants used materially false, deceptive, misleading representations and means in its attempted collection of Plaintiff's alleged debt.

161.    Defendants' communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to Defendants' collection efforts.

162.    The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights; the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. The Defendants' false representations misled the Plaintiff in a manner that deprived him of his right to enjoy these benefits, and therefore these materially misleading statements trigger liability under section 1692e of the Act.

163.    These deceptive communications additionally violated the FDCPA since they frustrate the consumer's ability to intelligently choose his or her response.

164.    Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered damages including but not limited to fear, stress, mental anguish, emotional stress, and acute embarrassment. Plaintiff and putative class members are entitled to preliminary and permanent injunctive relief, including declaratory relief, and damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

(a) Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class representative and The Tariq Law Firm, PLLC as Class Counsel;

(b) Awarding Plaintiff and the Class statutory damages;

(c) Awarding Plaintiff and the Class actual damages;

(d) Awarding Plaintiff costs of this Action, including reasonable attorneys' fees and expenses;

(e) Awarding pre-judgment interest and post-judgment interest; and

(f) Awarding Plaintiff and the Class such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: Brooklyn, NY
       March 28, 2018

                     Respectfully submitted,

                      _*s/Subhan Tariq*__
                     Subhan Tariq, Esq.
                     The Tariq Law Firm, PLLC
                     *Attorneys for Plaintiff*
                     68 Jay Street – Suite 201
                     Brooklyn, NY 11201